2022, 1895. Mr. Helm again. Thank you, Your Honor. May it please the Court. The Board's finding that adding a diffuser to a reflectance-type sensor would increase the reflected signal strength is not supported by substantial evidence. In fact, the only evidence of record directly bearing on this issue, i.e., the impact of a diffuser on a reflectance-type sensor signal, comes from Masimo's expert, who carried out a series of measurements, placing a diffuser on a sensor and determining the change in the received reflected signal. The result of those experiments demonstrated a substantial decrease in the signal strength that was reflected. Masimo's expert explained that those results reflected what would have been understood by an artisan at the time and, in fact, reflected a general principle that spreading light over a wider area decreases the reflected signal. That evidence and testimony was not rebutted. There was no expert declaration submitted in rebuttal, and so it stood uncontested. Nevertheless, when the Board addressed that information and evidence, it gave it zero weight, and there were legal and factual errors associated with its decision to give it zero weight. The factual error that I want to highlight has to do with the Board's determination that the pertinent prior art references all contain multiple detectors. That is wrong, because the only reference here that discloses a diffuser at all is called Chin, and Chin only includes one detector. So the system that was tested by Masimo's expert tracked that disclosed in Chin. But Chin may have one detector, but its purpose within the motivation structure here is that it teaches a diffuser in a sensor. Your Honor, that's exactly right, which is why it's particularly relevant to test. If you want to understand what Chin's disclosure is conveying to a skilled artisan, you would want to test the structure disclosed in Chin, not, as the Board found, the combined structure after it had already been made. But the finding that the Board made was more specific, and it declined to give any weight to the evidence because it found the pertinent prior art did not include single detector structures like the one that was tested. Now that means that Chin shouldn't be considered as prior art either. If it's not pertinent art, if the structure is not pertinent for the purposes of determining poundability, when it cuts against obviousness, it shouldn't be used in favor of... So the structure here, you're talking like the nose versus the wrist. No, Your Honor, although that's a different issue. The structure here is the physical structure of the detector. And so what the Board said was that we only think that a sensor that has multiple detectors would give probative information. Because it is outside the scope of the relevant art, the pertinent prior art, to test it. Chin deals with oximeters. Excuse me? Chin deals with oximeters. It absolutely does. Why does it have to be not pertinent? Your Honor, we think it is pertinent prior art. And we think that the fact that it has one detector doesn't distinguish it at all. But you can't have it both ways. As the Board, you can't discount the evidence that shows that the finding of an increased signal is just wrong. You can't discard that evidence because the testing was carried out on an oximeter that included one detector. You can imagine, as an additional factual consideration, you can imagine the situation. These detectors are like buckets in the rain. And if it's raining, if it's drizzling, a single bucket will collect a certain amount of water. And if it's pouring, it'll collect more water. It's the same thing here. If you have multiple buckets, overall you'll collect more water, but each individual bucket has less if it's drizzling versus if it's pouring down rain. So these arguments were made to the Board, correct? Yes, these arguments were made to the Board. That's correct. What's the standard of review with respect to these particular issues? So the standard review is a substantial error standard of review in terms of the factual determinations. And the factual determination here that the pertinent prior art did not As I said, you can't have it both ways. Either you view that as relevant to the question of accountability, or you view it as irrelevant. You can't say it's relevant when we're establishing obviousness, the teachings of Chin, and irrelevant when we're determining whether our factual findings are actually correct as a factual matter. That's particularly true because the Board's treatment of Chin's disclosure was also not supportive. So Chin only mentions a diffuser twice. Once is at the very, very beginning in his discussion of the prior art where it talks about one type of sensor, and the later is at column eight where it discusses a sensor that has, it's a transmissive type sensor that may, in some instances, increase the amount of tissue penetrated. Now, a brief aside, the difference between a reflectance type and a transmissive type sensor is that a reflectance type sensor must measure light that comes and bounces back from the measurement site. That's what's claimed. Whereas a transmissive type sensor must penetrate through the tissue, and the measurement must be taken on the opposite side. So in that respect, they're measuring different phenomena, whether the light has bounced back versus penetration. The Board relies on a statement in the middle of column, I believe it's column five of Chin, that talks about a broad applicability. It says you can use this in a reflective or transmissive sensor and at different body parts. But that statement is not made with respect to the discussion about a completely different feature. Column eight is where the diffuser is discussed. The discussion about any body part or reflective sensors comes in the middle of column five, I believe. And so it is entirely remote. And the column before, starting in column four, continuing through column five, and into column six, it's a multi-column discussion of a thermistor, which is a heating element. You might imagine that a heating element, which is intended to get more blood to the area, that could be placed at any part of your body, and the design could be used for any purpose. It's very strange to think that the drafter stepped back in the middle of this multi-column discussion of a thermistor to make a comment related to something in column eight. It doesn't make much sense. It is the type of argument that, as lawyers, we like to make. But as an artisan, it would be nonsensical. I want to highlight something else in Chin that similarly distinguishes the board's finding. Chin talks about different features for different types of sensors. So for the reflectance type sensor, it comments that you could put a reflective surface on the opposite side, because there was a question about the thin versus thick sites. This is partly where it comes in. Chin was confused about the light penetrating through the body and emerging from the other side, so you could not measure that reflectance signal. Of course, you wouldn't want to increase the penetration if you're worried about penetration in the first place. But it recommends putting a reflective surface to bounce the light back in. That type of reflective surface would have the effect of destroying a transmissive sensor. So it can't be that Chin's individual embodiments are supposed to be read broadly. I want to talk also about, just briefly, about how the board determined that the declaration of evidence was not relevant. And it did so, and this is because there was no rebuttal evidence submitted. I'm talking about the expert declaration and the expert analysis of the reflectance signal. What the board did was it had no evidence supporting its position. So if you read the board's opinion, you can see there's nothing cited in support of its analysis. We raise this as a legal issue as well, and I understand that it is sometimes hard to draw that line between what is a factual determination versus the board perhaps creating its own evidence. But we think this may fall on the side, like in Brand v. Miller, of the board providing its own expertise or using its own expertise instead of assessing the prior art of record. One, there's no citation to any evidence of record in support of its position. And two, the types of statements that were made have to do with assessing the scientific validity of the determination, whether or not they were sufficient. And so we think that's just the analogy I would draw a parallel with if the board went out and found a new reference and injected it into the final written decision, it would raise the same types of issues because we cannot cross-examine the board or we cannot respond to those arguments. And so that's the concern with what the board did in this case with respect to how it treated the expert's evidence that was submitted and unrebutted. So you're not making the legal argument that the board can never reject an unrebutted affidavit? Of course not. Since you're trying to frame this as a legal argument, what is the legal standard we're applying here? If the board does it, it has to explain why, what more is needed? Because the board did explain why it didn't view the expert's experiments as necessarily probative, right? So you disagree with that? You didn't mean that you have the right to cross-examine the board and what it said, right? No, that is, Judge Crost, of course, a point of why if the board is basing its analysis on its own experience, that's the problem that arises under the APA, which is that you have to do it as of the record. And in this particular thing, it would raise a due process issue because we would not be... Well, isn't it the question, really, whether there's substantial evidence to support the board's conclusions, not this legal argument about what it can and cannot do in rejecting evidence? I think both things are true. I just want to make one quick point and then I'll reserve the rest of my time. Judge Lurie, I know that I have passed your time. And that's the idea of offsetting benefits. And to have offsetting benefits, there have to be two different benefits. In this instance, the benefit that was cited was an increased reflective signal strength. And the only evidence of record bearing on that issue shows that that benefit does not exist. And in fact, the opposite is a detriment. So there is no offsetting benefit analysis here. And you cannot find obviousness based upon some unknown benefit or unarticulated benefit. I'll reserve the rest of my time. Thank you. Substantial evidence supports the board's finding of a motivation to combine Chinn's diffuser with Soranto-Mendelsohn sensor or Ackerman sensor. First, Chinn itself explicitly teaches that using a diffuser is beneficial for causing light to pass through more tissue and thus more blood. That is a benefit the board relied upon. Dr. Anthony, our expert, explained that diffuser, which causes the light to pass through more tissue and thus more blood, results in a stronger reflected signal with less relative noise at the detectors. And Chinn itself in column 1, lines 40 to 44 explains that when light encounters a larger volume of blood, we get a better signal to noise ratio. And so this was a benefit that the board identified based on Chinn's teachings and Dr. Anthony's opinion that would have motivated one of Skill in the Art to combine the diffuser of Chinn with the sensors, the base sensors. I want to speak just a little bit about this issue about the tests. I want to start with counsel's suggestion that the board indicated that the prior art somehow the prior art doesn't have multiple detectors. It's certainly not true. If you look at appendix 24, the board in explaining why it found that Dr. Mattesetti's tests were not probative, points out that Dr. Mattesetti does not explain why, for example, the commercially available sensor he selected and the particular diffuser material he selected could somehow be regarded as constituting the type of sensor, quote, that emerges from the combined teachings of Sorrento's mental cynicism. So we're talking about the combined teachings have multiple sensors. There's nothing in the board's opinion that suggests that Chinn should be disregarded because it doesn't have multiple detectors. Rather, the combination relies on Sorrento's and Mendelsohn for the multiple detectors, and then it relies on Chinn to add the diffuser to that combination, to that system. And so I just want to be very clear, there's nothing in, there's no inconsistency in the board's opinion because the board understands that we're talking about the combination. And so in addition to an unexplained reason for picking the particular sensor, the particular diffuser material, the board found that this evidence was not probative because it was not testing the combined system. It was not a multi-detector, multi- pair, well-supported decision, and the board committed no error in declining to assign it weight. But the board went on. The board said, well, even if one were to take the testing at face value, it talks about how even if some undesirable conditions were to emerge in some circumstances, the combination doesn't have to come up with the best possible device because there could be trade-offs. And the trade-offs it identified in terms of contrary to what counsel suggested was the better signal, the improved signal-to-noise ratio. The signal with less relative noise is a benefit that one gets by using a diffuser. And so as a result, the board's properly, was certainly not required to accept Dr. Manastedi's test at face value. There was no legal error. And given the evidence of record, which as a whole shows there is a motivation to combine, our test and appeal is to look for substantial evidence. We find that substantial evidence in the teachings of Chin and the Declaration of Anthony and these Manastedi tests do nothing to call those findings into question. One other point I'll make about these tests is sort of a thrust of Matt Massimo's argument is the test spoke predominantly, in fact exclusively, as to the amplitude of the signal. They're talking of strength in terms of amplitude of the signal. It is utterly silent on this concept of quality of signal, of the noise, the signal-to-noise ratio, which again Chin specifically says in columns one and two, using a diffuser allows light to pass through more tissue and more blood, giving us a better quality signal. So the tests are in opposite with respect to the main benefit that the board relied upon in terms of, as Dr. Anthony said in paragraph 99, having less relative noise. And so we do have, we still have the benefit that can be traded against a potentially lower amplitude of signal. And I should point out when the light is diffused to the skin, it's going through a larger surface area of the skin. And so what we have in terms of there's more noise, and if there's some sort of aberration or occlusion in one tiny part of the surface area, the quality of the signal as a whole will not be affected by that one area, since there's a larger surface area being done in a reflective sensor. So if you do not have any questions, I will just reiterate that substantial evidence in this teaching, specifically in column two, about the benefits to using a diffuser, and Dr. Anthony's declaration, which takes that teaching and explains why one of skill in the art would have been motivated to apply it to the sensors of Cervantes and Mendelsohn in one hand or Akerson in the other. Those are reflective sensors, and Dr. Anthony in several paragraphs explains why one of skill in the art would have had no problem in making that combination. For those reasons, we ask Your Honor to refer. As you know, counsel, no one loses points for not using up all their time. Thank you, Your Honor. Mr. Helm has a little time left. Thank you, Your Honor. And briefly, I don't believe that this portion of Chin in column one was cited before. I'm not sure it was cited in the briefing. I looked at Dr. Anthony's declaration, and he did not rely on that portion of Chin in column one. So I believe that may be a new argument or a new piece of evidence that's being presented on appeal. The second point I'd like to make is that Dr. Anthony's declaration relies on the benefit of increased signal strength. And the fact that there is no increased signal strength, you cannot save that as a motivating benefit by the idea that it would also reduce the signal-to-noise ratio, because that's not what's discussed in Chin column two. Let's discuss there is one type of sensor that passes light through tissue. Again, as I said, it requires light that is reflected from the tissue, not passing through. So it's an inconsistent piece of evidence relative to the system that's being claimed here. With that, I'm happy to yield the remainder of my time. Thank you, Your Honor. Thank you, counsel. We appreciate hearing from both counsels. All morning, the case is submitted.